ALEXANDER BROTHER, Syndic of the Creditors of PETER CONREY *v.*
JAMES SAUL et al.

In May, 1850, C. deposited certain shares of bank stock with S., as collateral security for the pay-
ment of $10,000 due S.   On the 10th of June, 1851, C. executed a power of attorney to S., autho-
rizing him " to sell, transfer, and assign unto himself, or any other person or persons," the
shares of bank stock.   On the 29th of August following, under this power, an actual
transfer of the stock was made to S.   In the mean time, say about the 1st of July, 1851, C. came
under protest—and, on the 7th of November of the same year, made a cession of his pro-
perty.   His syndic, the plaintiff, instituted this suit, alleging that C. was in insolvent circum-
stances on the 10th of June, 1851, as well as on 29th of August, and to the knowledge of defen-
dant.   He prays that the transfer be set aside, and that the stock be decreed to belong to him in
his capacity as syndic.

*By the court:*  We have here a pledge of the stock made in good faith, to secure a *bona fide* debt,
at a time not suspicious, and by which no creditor was injured.   The allegation of the petition,
that *Conrey* was insolvent on the 10th of June, 1851, and that to the knowledge of *Saul*, is dis-
proved by the evidence, and even by the admission of the plaintiff.   Simultaneously with the
pledge of the stock, the power of attorney was given, purporting to be *for value received* and
*irrevocable.*   Those clauses sufficiently indicate the interest of *Saul* in the object of the man-
date—the stock.   That interest was an interest of pledgee.   As pledgee he had no power to sell
the object pledged, unless by virtue of a judicial order ; and the power to him to do so, was a
nullity, even between the parties.   C. C. 3132.   It follows that the transfer which was made of
the stock under this power, was also a nullity.   But the nullity of the assignment of the owner-
ship of the stock, leaves defendant's right as pledgee in full force.

As to any informality in the pledge, as for instance, the want of the act of pledge required by Arti-
cle 3125 of the Code, the syndic of the pledgor cannot disturb the pledge on any such ground,
when the contract was made in good faith, and no creditor was injured thereby.

The pretended pledge of the bank stock was void as to other, and even subsequent creditors of C.,
and it invested S. with no privilege upon the stock, under Articles 3124, 3125 of the Civil Code,
which were in full force at the time.   SPOFFORD, J., with whom concurred LEA, J., dissenting.

APPEAL from the Second District Court of New Orleans, *Lea,* J.
*Bradford* and *Hunton,* for plaintiff.   *Finney* and *Benjamin,* for defen-
dant and appellant.

BUCHANAN, J.   On the 10th of June, 1851, *Peter Conrey, Jr.,* being in-
debted to *James Saul,* the defendant, in the sum of ten thousand dollars, made
his note, payable to the order of the latter, for that amount, with six per
cent. interest from date ; and, in case of default, interest at eight per cent.
from demand.

On the same day, *Mr. Conrey* delivered to defendant two hundred shares of
the capital stock of the Mechanics' and Traders' Bank, and executed his
power of attorney in the following terms:

" Know all men by these presents, that I, the undersigned, for value re-
ceived, do hereby irrevocably constitute and appoint *James Saul,* of New
Orleans, to be my true and lawful attorney, for me, and in my name and be-
half, to sell, assign, and transfer unto himself, or any other person or persons,
two hundred shares in the capital stock of the Mechanics' and Traders' Bank
of New Orleans ; and further, one or more persons to substitute with like
power.   In witness whereof, I have hereunto set my hand, this 10th of June,
1851.                                                    PETER CONREY, JR."

On the 20th of August, 1851, defendant, then being in New York, substi-
tuted, by letter, *Edward Rawle,* with special power to transfer to himself
(defendant) the two hundred shares of .bank stock in question.

BROTHER
v.
SAUL.

On the 29th of August, 1851, *Edward Rawle*, made a transfer of the said shares of stock on the transfer book of the bank, in the following words:

" For value received, I do hereby assign unto *James Saul*, all my right, title and interest, in two hundred shares of the capital stock of the Mechanics' and Traders' Bank of New Orleans, on which has been paid fifty dollars on each, being the same as described by a certificate issued to me, numbered 1047, dated 19th of April, 1850, which certificate is null and void.

                                PETER CONREY, by E. RAWLE,
Of this transfer, witness,              substituted by JAMES SAUL.
      P. ARNOUIL.                EDWARD RAWLE."

*Peter Conrey, Jr.*, made a cession of his property to his creditors, on the 7th of November, 1851; and this suit was brought by the syndic of his creditors, on the 9th of June, 1852, to make and annul the transfer of stock of the 29th of August preceding, as made in fraud of *Conrey's* creditors and to their injury.

The petition alleges, that *Conrey* was in insolvent circumstances on the 10th of June, 1851, as well as on the 29th August, 1851, and wholly unable to meet his liabilities, at both of those dates, to the knowledge of defendant. It concludes by a prayer, that the assignment and transfer of the aforesaid two hundred shares of stock, be declared null and void, and the same recognized and decreed to belong to petitioner, in his capacity of syndict, together with all dividends which have accrued, and may hereafter accrue thereon.

On the trial, it was admitted, that *Conrey*, was solvent and rich, until the news reached New Orleans, about the 1st of July, 1851, of the protest of his bills on *Samuel Jaudon*, of New York.

It was also admitted, that when *Saul* wrote to *Mr. Rawle*, authorizing him to transfer the stock, which was on the 20th of August, 1851, he was aware of the insolvency of *Jaudon* and the protest of *Conrey*.

It is proved, that the exchange operations of *Conrey* with *Jaudon*, were very extensive—the amount of the drafts of the former on the latter being about half a million—and that *Conrey's* credit was affected by the protest of those bills.

It is also proved, that *Conrey* and *Saul* both married sisters of *Jaudon*; and from this connection, it is argued, that defendant must have been intimately acquainted with their affairs.

Whether *Saul's* knowledge of *Jaudon's* insolvency, necessarily implied a knowledge of *Conrey's* insolvency at the date proved, or whether, in fact, the proof of *Conrey* being under protest on the 29th of August, 1851, is tantamount to proof of his being insolvent at that date, in the sense of Article 1980 of the Code, are questions which it is deemed unnecessary to decide, inasmuch as we consider the assignment of the stock by *Conrey*, represented by *Rawle* to *Saul*, to be void for an entirely different reason.

There is no doubt of *Saul's* being a *bona fide* creditor of *Conrey*, to the amount of ten thousand dollars, on the 10th of June, 1851. That debt was represented by a promissory note of that date, and was made up of a note of $8,500 of the 9th of August, 1850, and of $1,500 paid by *Saul* to *Conrey*, on the 10th of June, 1851. The note of $8,500 was itself a renewal of a note for a much larger amount ($12,000) given by *Conrey* to *Saul*, for money lent, on the 1st of December, 1849. The certificate for the two hundred shares of

Mechanics' Bank stock, had been deposited by *Conrey* in *Saul's* hands, as far back as May, 1850, as collateral security of the first of those notes; and the notes of $8,500 and $10,000, were intended to be secured by the said shares of stock. The certificate of said stock was placed in *Mr. Saul's* hands, with that view. We have here a pledge of the stock made in good faith, to secure a *bona fide* debt, at a time not suspicious, and by which no creditor was injured. The allegation of the petition that *Conrey* was insolvent on the 10th of June, 1851, and that to the knowledge of *Saul*, is disproved by the evidence and even by the admission of the plaintiff.

Simultaneously with the pledge of the stock, the power of attorney already mentioned was given, purporting to be *for value received* and *irrevocable*. Those clauses sufficiently indicate the interest of *Saul* in the object of the mandate—the stock. That interest, as we have seen, was an interest of pledgee. As pledgee, he had no power to sell the object pledged, unless by virtue of a judicial order; and the power to him to do so, was a nullity, even between the parties. C. C., Art. 3132. It follows that the transfer, which was made of the stock, under this power, was also a nullity.

But the nullity of the assignment of the ownership of the stock, leaves defendant's right as pledgee in full force. See *Partee's Syndic* v. *Corning*, 9 An. 539.

And as to any informality in the pledge, as for instance, the want of the act of pledge required by Article 3125 of the Code, it has been settled in the same case, that the syndic of the pledgor cannot disturb the pledge on any such ground, where the contract was made in good faith, and no creditor was injured thereby. In this case, the defendant had possession of the stock as a security for *Conrey's* indebtedness to him, from a period antecedent to the existence of any debt upon *Conrey's* schedule, which is in evidence.

It is therefore adjudged and decreed, that the judgment of the District Court be amended; that the transfer of two hundred shares of Mechanics' and Traders' Bank stock from *Peter Conrey, Jr.*, represented by *E. Rawle* to defendant, on the 29th of August, 1851, be declared null and void; that defendant be recognized as pledgee of the said two hundred shares of stock, for the security of a debt of ten thousand dollars, with interest at six per cent. from the 10th of June, 1851; that the injunction herein issued, be perpetuated, so far as it prohibits the transfer of said stock by defendant, and dissolved so far as it prohibits defendant from receiving the dividend or dividends upon the same; that said dividend or dividends heretofore declared, be credited upon the debt due defendant, as aforesaid; that the stock be sold by the Sheriff, for cash, to pay the said debt; and the surplus of proceeds of sale, if any, to be paid over to plaintiff. The costs of the District Court to be paid by defendant, and those of appeal by the appellee.

MERRICK, C. J., with whom concurred VOORHIES, J. I concur in the opinion of Mr. Justice BUCHANAN, because I consider the former decisions overruled by the recent decisions of this court in the cases of *Campbell* v. *Slidell*, 5 An. 274, and *Partee, Syndic*, v. *Corning & Co.* 9 An. 539. Moreover, these late authorities meet the equity of this case.

SPOFFORD, J., with whom concurred, LEA, J., dissenting. Upon the authority of the cases of *Saul* v. *His Creditors*, 5 N. S. 569; *Devlin* v. *His Creditors*, 2 La. 361; *Canizo's Syndic* v. *Cuadra*, 2 L. 459; and *Shaw, Syndic*, v.

29

BROTHER
*v.*
SAUL.

*Newton*, 3 L. 528, I think the judgment appealed from in this case, should be affirmed.

The pretended pledge of the bank stock was void as to other and even subsequent creditors of *Conrey*, and it invested *Saul* with no privilege upon the stock, under the Articles 3124, 3125 of the Civil Code, which were in full force at the time.

There is certainly an equity in favor of the defendant, but no stronger equity than existed in favor of the pretended pledgees in the analogous cases cited above. So well settled was the judicial construction of Article 3125, that it was found necessary to change the law by the legislative enanctment "concerning pledges," approved February 12th, 1852, (p. 15.) That Act would have been unnecessary, if the courts already had power to relieve creditors who had attempted to secure themselves by taken pawns, in disregard of the provisions of Article 3125.

As the Act of 1852 can have no retrospective operation, I think we are without power to relieve the defendant, notwithstanding the hardship of his case.